IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KEITH LAMONT FRAZIER**                                                                 **PLAINTIFF**

v.                                     **Case No. 4:25-cv-00338-LPR**

**CITY OF ALEXANDER, et al.**                                                         **DEFENDANTS**

## ORDER

In this case, Mr. Frazier has attempted to sue the City of Alexander, the Alexander Police Department, Chief Burnett, Assistant Chief Burnett, Sergeant Hobby, Officer Shaw, Alexander City Attorney Chris Madison, and Investigator Robertson.[1] But there are a lot of problems with the operative Complaint.

1.      Among other named Defendants, Mr. Frazier is trying to sue the Alexander Police Department.[2] But the Alexander Police Department is not a legal entity that can be sued.[3] Any claim that Mr. Frazier is trying to state against the Police Department—assuming viability—would instead be a claim against the City of Alexander.[4] Accordingly, all claims against the Alexander Police Department are dismissed, and the Alexander Police Department is terminated as a Defendant.[5]

---

[1] *See* Am. Compl. (Doc. 3).

[2] *Id.* at 1, 4.

[3] *See Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); *De La Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (affirming the district court's dismissal of the county jail and the sheriff's department as parties because they were not suable entities).

[4] *See Graves v. Sullivan*, No. 4:06CV01710 SWW, 2007 WL 1340806, at *1 (E.D. Ark. May 7, 2007) ("Under Arkansas law, political subdivisions, including cities, are empowered to sue and be sued, but police departments are merely divisions or departments of political subdivisions, without the capacity to sue or be sued." (internal citation omitted)).

[5] Because the Alexander Police Department is not a legal entity capable of being sued, it is of no moment that the Department did not file an Answer or Motion to Dismiss.

2. To the extent the operative Complaint in this case seeks Rule 60(b) reconsideration of an order and judgment in an earlier federal case,[6] the Court lacks jurisdiction to grant such relief.[7] To the extent the operative Complaint seeks the loss of law enforcement certifications for certain police officers,[8] the Court lacks jurisdiction to grant such relief.[9] To the extent the operative Complaint seeks Attorney Madison's referral to the State Bar,[10] the allegations don't plausibly suggest a right to such relief. To the extent the operative Complaint seeks to enforce the United States Flag Code,[11] there is no private right of action to do so.[12] To the extent the operative Complaint seeks to enforce 18 U.S.C. Sections 241 and/or 242,[13] there is no private right of action to do so.[14]

3. Mr. Frazier alleges that Sergeant Hobby "engaged in assault and battery upon [his] person, [as] evidenced on [a body camera recording] . . . ."[15] But the body camera recording was not attached to the operative Complaint.[16] And, without the body camera recording, the allegations against or about Sergeant Hobby are legal conclusions, not well-pled facts. The closest Mr. Frazier comes to a well-pled fact about Sergeant Hobby is the allegation that "Sergeant Hobby engage[ed]

---

[6] *See* Am. Compl. (Doc. 3) at 3–4.

[7] *See* Fed. R. Civ. P. 60(b). Mr. Frazier can make a motion for Rule 60(b) relief in the docket of his earlier case if he believes such a motion might be successful. But he can't seek that relief in the instant litigation.

[8] *See* Am. Compl. (Doc. 3) at 3.

[9] The Arkansas Department of Public Safety, the entity with the power to revoke law enforcement certifications, is not a party to this case. *See* Ark. Admin. Code 015.10.1-1009(11)(a).

[10] *See* Am. Compl. (Doc. 3) at 3.

[11] *See id.*

[12] *See* 4 U.S.C. §§ 1–10.

[13] *See* Am. Compl. (Doc. 3) at 3.

[14] *See* 18 U.S.C. §§ 241–242.

[15] Am. Compl. (Doc. 3) at 2.

[16] On a motion to dismiss, the Court only looks to the operative complaint, documents embraced by the operative complaint, and judicially-noticeable facts. *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

in battery (any unwanted touching) and assault (which for [Law Enforcement Officers] is implied by their weapons and badges)."[17] But the implication that Sergeant Hobby committed an unwanted touching while he had a weapon and badge in his possession is still not enough—more specifics about what Sergeant Hobby actually did is needed to support the assertion that Sergeant Hobby committed an unwanted touching.[18]

4.    Mr. Frazier also alleges that "[Officer] D. Shaw was witness to the violation of [Mr. Frazier's] 4th amendment right to be secure in [his] person . . . ."[19] This statement represents a legal conclusion—that Mr. Frazier's Fourth Amendment rights were violated—as opposed to a well-pled fact. And without facts to support the legal conclusion, it is not relevant that Officer Shaw was a witness (to something). To the extent Mr. Frazier was using this allegation to try and state a Fourth Amendment-related (unlawful seizure or excessive force) claim (including a 1983 claim) against Sergeant Hobby, the allegation is nothing more than a legal conclusion. And to the extent Mr. Frazier was using this allegation to try and state some type of claim against Officer Shaw for being present, seeing, participating in, or not stopping the (allegedly) unlawful seizure or excessive force, the allegation doesn't plausibly suggest any liability.[20]

5.    It is true that the operative Complaint alleges that, (1) on October 26, 2024, Mr. Frazier "visited the Alexander Police Department . . . to inquire why there was no American flag located on their premises, police cruisers, or uniform[,]" and (2) "[Sergeant] Hobby threatened [Mr. Frazier] with disorderly conduct and disturbing the peace to force [his] removal from the

---

[17] Am. Compl. (Doc. 3) at 4.

[18] Assault and battery claims are creatures of state law. As explained below, the Court is not inclined to exercise jurisdiction over them where, as here, no federal claims are viable against Sergeant Hobby.

[19] Am. Compl. (Doc. 3) at 2.

[20] Because no viable federal claim passes Rule 12(b)(6) muster (as currently pled) against Sergeant Hobby or Officer Shaw, the Court believes it would be a bad use of discretion, in the circumstances of this case, to exercise supplemental jurisdiction over the assault and battery state law claims.

public owned property."[21]   Theoretically, these allegations might form the basis of a First Amendment retaliation claim.  But Mr. Frazier does not currently bring such a claim.  Moreover, Mr. Frazier does not allege that he ever verbalized the inquiry about the flag; he only alleges that this was his purpose in visiting.[22]   For a potentially valid First Amendment retaliation claim, Mr. Frazier at least needs to allege that he actually voiced some issue before Sergeant Hobby threatened him.[23]

6.   In light of the above, there are no plausibly stated federal claims against Sergeant Hobby.  So Sergeant Hobby is (and all claims against him are) dismissed without prejudice under Rule 12(b)(6).

7.   The operative Complaint alleges precious little about Officer Shaw.  The operative Complaint alleges that (1) when Mr. Frazier came to the police station on October 26, 2024, he "was met" by Officer Shaw in addition to Sergeant Hobby; and (2) Officer Shaw "was witness to [Sergeant Hobby's] violation of [Mr. Frazier's] 4th amendment right to be secure in [his] person . . . ."[24]   None of this is enough to plausibly allege any type of liability with respect to Officer Shaw.  So Officer Shaw is (and all claims alleged against him are) dismissed without prejudice under Rule 12(b)(6).

8.   With respect to Assistant Chief Burnett, the operative Complaint's allegation that the "Assistant Chief . . . violated, [Mr. Frazier's] 4th amendment right to be secure in [his] papers, person, and effects" is just a legal conclusion.[25]   Even assuming—as alleged in the operative

---

[21] Am. Compl. (Doc. 3) at 4.

[22] *See id.*

[23] *See Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) ("To prevail on his First Amendment retaliation claim, [the plaintiff] must show . . . that he engaged in a constitutionally protected activity . . . .").

[24] Am. Compl. (Doc. 3) at 2, 4.

[25] *Id.* at 1.

Complaint—that she accessed files on the Arkansas Crime Information Center (ACIC) without any wrongdoing by Mr. Frazier,[26] that would not amount to a violation of *federal* law or of the *federal* Constitution. And even assuming—as alleged in the operative Complaint—that she "attempted to cover up misuse of the ACIC by refusing to obtain a Body Worn Camera . . . when asked to document her wrongdoing[,]" that would not amount to a violation of *federal* law or of the *federal* Constitution.[27] Finally, even assuming the Assistant Chief wrongfully refused a FOIA request made under Arkansas law—again as alleged in the operative Complaint[28]—that would not amount to a violation of *federal* law or of the *federal* Constitution.

9. In short, and more globally, there are no viable federal claims alleged against the Assistant Chief. The Court does not believe, in the circumstances of this case, it would be a good exercise of discretion to assert supplemental jurisdiction over the state law claims against the Assistant Chief in absence of any viable federal claims. So the Assistant Chief is (and all the claims against her are) dismissed without prejudice.

10. With respect to Chief Burnett, the operative Complaint states no allegations against him—save for (1) being married to the Assistant Chief, and (2) being in charge of the Alexander Police Department.[29] None of this plausibly suggests any federal liability with respect to Chief Burnett. So the Chief is (and all the claims against him are) dismissed without prejudice.

11. The operative Complaint faults City Attorney Chris Madison for "violat[ing] Federal Law for failing to respond to any of [Mr. Frazier's FOIA] requests . . . ."[30] This doesn't

---

[26] *See id.*

[27] *See id.* at 2.

[28] *See id.* at 4.

[29] *Id.* at 2, 4.

[30] *Id.* at 2.

pass muster. First, the operative Complaint seems to suggest that Mr. Madison did provide responses, but through Jennifer Hill.[31] In any event, the Complaint makes it clear that Mr. Frazier is talking about violations of the Arkansas FOIA, which do not create federal liability.[32] And the Court does not believe, in the circumstances of this case, it would be a good use of discretion to exercise supplemental jurisdiction over any state law claims Mr. Frazier may have against Mr. Madison.

12.     To the extent Mr. Frazier is attempting to sue the City employees in their official capacities, that would be the equivalent of a claim against the City itself.[33] And such claims would be dismissed under Rule 12(b)(6) because, *inter alia*, Mr. Frazier has not alleged a policy, practice, or custom that is the motivating force behind any (alleged) violation of federal law or of the federal Constitution.[34] The Court dismisses all claims against the City for the same reasons it dismisses the official capacity claims against the City employees.[35]

13.     The City Defendants' Brief well explains why there is no plausible 42 U.S.C. Section 1985 or 1986 action based on the operative Complaint's allegations.[36] Any corresponding

---

[31] *See id.*

[32] *See id.*

[33] *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").

[34] *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) ("[A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom.").

[35] The Court reads the Motion to Dismiss and accompanying Brief at Docs. 9 and 10 to include an attack on the claims against the City. The City (through its lawyer) signed both documents. *See* City Defs.' Mot. to Dismiss (Doc. 9) at 2 ("Respectfully Submitted, City of Alexander, et al. . . . By: M. Keith Wren"); Br. in Supp. of City Defs.' Mot. to Dismiss (Doc. 10) at 15 ("Respectfully Submitted, City of Alexander, et al. . . . By: M. Keith Wren"). And although the opening paragraphs of the documents don't mention the City, they do speak of the City employees in their official capacities. *See* City Defs.' Mot. to Dismiss (Doc. 9) at 1; Br. in Supp. of City Defs.' Mot. to Dismiss (Doc. 10) at 1. That is the equivalent of the City.

[36] *See* Br. in Supp. of City Defs.' Mot. to Dismiss (Doc. 10) at 7–8.

state law claims should be dismissed because the Court does not believe it a good use of discretion, in the circumstances of this case, to exercise supplemental jurisdiction over them.

***

In light of the foregoing, the Court: (1) dismisses the claims against the Alexander Police Department with prejudice; and (2) dismisses the claims against Chief Burnett, Assistant Chief Burnett, Sergeant Hobby, Officer Shaw, City Attorney Chris Madison, and the City of Alexander without prejudice. The Court believes that, with counsel, Mr. Frazier may be able to fix some or all of the federal claims in this case.[37] Accordingly, the Court appoints Austin Porter as counsel for Mr. Frazier and gives Plaintiff 60 days in which to file a Second Amended Complaint.[38] If the new Complaint, which will completely supersede and replace the current Complaint, fixes the Rule 12(b)(6) shortcomings of the instant Complaint, the Court will proceed to consider the City Defendants' other arguments (like res judicata).

The Court is not dismissing Investigator Robertson at this time. His Motion to Dismiss was not filed until after his Answer.[39] That is not allowed under Federal Rule of Civil Procedure 12(b). The Court can, however, treat the Motion as one for Judgment on the Pleadings.[40] The

---

[37] If any federal claim survives, the Court will reevaluate whether it should exercise supplemental jurisdiction over the state law claims.

[38] Under the governing standard, the Court is not required to appoint counsel. But, in an act of discretion, the Court thinks that a lawyer might be able to bring better order to this case and separate the wheat from the chaff. **With respect to the instant case, so long as Mr. Frazier has appointed counsel, Mr. Frazier may only communicate with the Court and court staff through that counsel. The Court directs the Clerk not to accept further pro se filings in this case and directs the court staff not to speak with Mr. Frazier about this case outside the presence of Mr. Frazier's appointed counsel.**

[39] *See* Robertson Answer (Doc. 4); Robertson Mot. to Dismiss (Doc. 7).

[40] *See* Fed. R. Civ. P. 12(c), (h)(2); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Court will do so once the pleadings have closed. For now, the Court STAYS Investigator Robertson's Motion to Dismiss as a matter of docket management.[41]

IT IS SO ORDERED this 9th day of May 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[41] Of course, if Mr. Frazier files a new Complaint, Investigator Robertson can respond to it with a Motion to Dismiss instead of an Answer if he so chooses. Doing so would moot his pending Motion to Dismiss.